UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GOLDY RAYBON,<br><br>           Plaintiff,<br><br>      v.<br><br>TOTTEN, et al.,<br><br>           Defendants. | No. 2:12-cv-1008-GEB-EFB P<br><br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff is a state prisoner proceeding without counsel in an action brought under 42 U.S.C. § 1983. The remaining defendants in this action, Totten and Hardy, have filed a motion for summary judgment. ECF No. 34. For the reasons that follow, it is recommended that defendants' motion be granted as to plaintiff's conditions of confinement claim against Totten and Hardy but denied as to plaintiff's excessive force claim against Hardy.[1]

/////

---

[1] After plaintiff filed an opposition, defendants filed a reply brief. *See* ECF Nos. 36, 37. Plaintiff then filed an unauthorized "response to defendants reply." *See* ECF No. 38. The letter filing must be disregarded. It is not authorized by either the Federal Rules of Civil Procedure or the court's Local Rules. *See* E.D. Cal., Local Rule 230(l).

Additionally, defendants have submitted a long list of objections to various representations in plaintiff's opposition. *See* ECF No. 37-1. Those objections are moot, as none of the representations to which defendants' object is material to the resolution of defendants' motion.

1

**BACKGROUND**

This action proceeds on plaintiff's first amended complaint filed April 17, 2012, and signed under penalty of perjury. ECF No. 2 ("Pl.'s Compl."). Plaintiff contends that defendants violated his Eighth Amendment rights when he was under contraband surveillance watch ("CSW") from September 19, 2009, to October 5, 2009, at Folsom State Prison. *Id.* at 5, 7[2]; *see also* ECF No. 34-7 ("Hardy Decl.") at Ex. 1 (informational chrono, providing October 5, 2009, as the date plaintiff was released from CSW).

CSW is reserved for inmates who prison officials suspect have ingested or otherwise concealed contraband in their body cavities. Hardy Decl. ¶ 3. Officials tape the legs and waists of CSW inmates' boxer shorts and the arms and legs of their jumpsuits. ECF No. 34-8 ("Totten Decl.") at ¶ 10. To further prevent inmates from accessing and disposing of contraband, officials employ waist restraints with handcuffs and leg restraints. *Id.* at ¶ 9. Officials place inmates on CSW in cells without showers or flushing toilets to prevent the disposal of contraband; when inmates notify prison staff that they need to urinate or defecate, staff provide a portable toilet or a plastic urinal device. *Id.* at ¶¶ 11, 12. An inmate is normally required to complete three contraband-free bowel movements before his release from CSW. *Id.* at ¶ 5.

Plaintiff's first claim is an Eighth Amendment "conditions of confinement" claim. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Specifically, plaintiff alleges that for the sixteen days he was on CSW, he was housed in a cell with a bright light that remained on for twenty-four hours per day and not provided a toothbrush, toothpaste, soap, the opportunity to shower, or sheets or covers for his plastic mattress. Pl.'s Compl. at 5, 7. Additionally, plaintiff alleges that on September 29, 2009, he notified Totten that he needed to urinate; however, plaintiff urinated on himself after waiting for a plastic urinal device for two hours. *Id.* at 6. Plaintiff contends that defendants tried to conceal or "cover this up" by changing plaintiff's clothing and that Hardy instructed Totten to not log the incident. *Id.* Plaintiff further contends that he defecated on himself on October 1, 2009. *Id.* Originally, plaintiff claimed he was "placed back in his cell

---

[2] For ease of reference, all references to page numbers in plaintiff's filings are to those assigned via the court's electronic filing system.

2

1  without a shower or anything to properly clean himself with." *Id.*  However, plaintiff later
2  clarified that following the incident, he was "provided with wet towelettes, such as wet-naps or
3  baby wipes to sanitize himself." *See* ECF No. 36 ("Pl.'s Opp'n") at 9, 13-14.
4        Plaintiff's second claim is that Hardy applied excessive force in violation of the Eighth
5  Amendment when taping plaintiff's boxers at the waist on September 21, 2009.  Pl.'s Compl. at 5.
6  When plaintiff complained that the tape was too tight, Hardy allegedly replied "[i]f you don't shut
7  up, I am going to make it tighter" and continued to wrap the tape "tighter and tighter." *Id.* at 5-6.
8  Hardy also allegedly placed waist chains around plaintiff's waist tightly and handcuffs around his
9  wrists before returning plaintiff to his cell. *Id.* at 6.  Plaintiff alleges that "he felt his circulation
10 cutting off" and experienced "difficulty breathing." *Id.* at 5-6.  Hours later, a nurse allegedly
11 requested that plaintiff be rushed to the Triage and Treatment Area ("TTA") after noticing that
12 plaintiff was incoherent. *Id.* at 6.  Before plaintiff's visit to the TTA—and thirty to forty minutes
13 before plaintiff met with a doctor in the TTA—Hardy allegedly loosened the waist restraints and
14 cut off some of the tape so that plaintiff could breathe. *Id.*; Pl.'s Opp'n at 5, 11, 16-17.
15       Plaintiff was released from CSW on October 5, 2009, after his third contraband-free
16 bowel movement.  Hardy Decl., Ex. 1.

17                                          **STANDARD**

18       Summary judgment is appropriate when there is "no genuine dispute as to any material
19 fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Summary
20 judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant
21 to the determination of the issues in the case, or in which there is insufficient evidence for a jury
22 to determine those facts in favor of the nonmovant. *Crawford-El v. Britton*, 523 U.S. 574, 600
23 (1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986); *Nw. Motorcycle Ass'n v.*
24 *U.S. Dep't of Agric.*, 18 F.3d 1468, 1471-72 (9th Cir. 1994).  At bottom, a summary judgment
25 motion asks whether the evidence presents a sufficient disagreement to require submission to a
26 jury.
27       The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims
28 or defenses.  *Celotex Cop. v. Catrett*, 477 U.S. 317, 323-24 (1986).  Thus, the rule functions to

1  "'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for
2  trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)
3  (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments). Procedurally,
4  under summary judgment practice, the moving party bears the initial responsibility of presenting
5  the basis for its motion and identifying those portions of the record, together with affidavits, if
6  any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477
7  U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). If the moving
8  party meets its burden with a properly supported motion, the burden then shifts to the opposing
9  party to present specific facts that show there is a genuine issue for trial. Fed. R. Civ. P. 56(e);
10 *Anderson,* 477 U.S. at 248; *Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 819 (9th Cir. 1995).

11       A clear focus on where the burden of proof lies as to the factual issue in question is crucial
12 to summary judgment procedures. Depending on which party bears that burden, the party seeking
13 summary judgment does not necessarily need to submit any evidence of its own. When the
14 opposing party would have the burden of proof on a dispositive issue at trial, the moving party
15 need not produce evidence which negates the opponent's claim. *See, e.g., Lujan v. National*
16 *Wildlife Fed'n*, 497 U.S. 871, 885 (1990). Rather, the moving party need only point to matters
17 which demonstrate the absence of a genuine material factual issue. *See Celotex*, 477 U.S. at 323-
18 24. ("[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a
19 summary judgment motion may properly be made in reliance solely on the 'pleadings,
20 depositions, answers to interrogatories, and admissions on file.'"). Indeed, summary judgment
21 should be entered, after adequate time for discovery and upon motion, against a party who fails to
22 make a showing sufficient to establish the existence of an element essential to that party's case,
23 and on which that party will bear the burden of proof at trial. *See id.* at 322. In such a
24 circumstance, summary judgment must be granted, "so long as whatever is before the district
25 court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is
26 satisfied." *Id.* at 323.

27       To defeat summary judgment the opposing party must establish a genuine dispute as to a
28 material issue of fact. This entails two requirements. First, the dispute must be over a fact(s) that

is material, i.e., one that makes a difference in the outcome of the case. *Anderson*, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). Whether a factual dispute is material is determined by the substantive law applicable for the claim in question. *Id.* If the opposing party is unable to produce evidence sufficient to establish a required element of its claim that party fails in opposing summary judgment. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322.

Second, the dispute must be genuine. In determining whether a factual dispute is genuine the court must again focus on which party bears the burden of proof on the factual issue in question. Where the party opposing summary judgment would bear the burden of proof at trial on the factual issue in dispute, that party must produce evidence sufficient to support its factual claim. Conclusory allegations, unsupported by evidence are insufficient to defeat the motion. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989). Rather, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue for trial. *Anderson*, 477 U.S. at 249; *Devereaux*, 263 F.3d at 1076. More significantly, to demonstrate a genuine factual dispute the evidence relied on by the opposing party must be such that a fair-minded jury "could return a verdict for [him] on the evidence presented." *Anderson*, 477 U.S. at 248, 252. Absent any such evidence there simply is no reason for trial.

The court does not determine witness credibility. It believes the opposing party's evidence, and draws inferences most favorably for the opposing party. *See id.* at 249, 255; *Matsushita*, 475 U.S. at 587. Inferences, however, are not drawn out of "thin air," and the proponent must adduce evidence of a factual predicate from which to draw inferences. *American Int'l Group, Inc. v. American Int'l Bank*, 926 F.2d 829, 836 (9th Cir.1991) (Kozinski, J., dissenting) (citing *Celotex*, 477 U.S. at 322). If reasonable minds could differ on material facts at issue, summary judgment is inappropriate. *See Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). On the other hand, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could

1  not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for
2  trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted). In that case, the court must grant
3  summary judgment.
4      Concurrent with the instant motion, defendants advised plaintiff of the requirements for
5  opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. ECF No. 34-1;
6  *see Woods v. Carey*, 684 F.3d 934 (9th Cir. 2012); *Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir.
7  1998) (en banc), *cert. denied*, 527 U.S. 1035 (1999); *Klingele v. Eikenberry*, 849 F.2d 409 (9th
8  Cir. 1988).

**ANALYSIS**

### I. Conditions of Confinement

The Eighth Amendment to the U.S. Constitution protects prisoners from inhumane methods of punishment and inhumane conditions of confinement. *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). Extreme deprivations are required to make out a conditions of confinement claim, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). To succeed on an Eighth Amendment conditions of confinement claim, a prisoner must show that (1) the defendant prison official's conduct deprived him or her of the minimal civilized measure of life's necessities (the objective component), and (2) the defendant acted with deliberate indifference to the prisoner's health or safety (the subjective component). *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To show deliberate indifference, the prisoner must establish that the defendant knew of and disregarded an excessive risk to inmate health or safety; "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Defendants do not dispute that plaintiff was in a cell with constant light and without a toothbrush, toothpaste, soap, showers, or bedding for sixteen days. Totten Decl. at ¶¶ 6, 11-12, 21; Hardy Decl. at ¶¶ 5, 13-14, 17. Nor do they dispute the allegation that plaintiff urinated on himself after Totten failed to provide a portable toilet on September 29, 2009. *See* Totten Decl. at

6

1  ¶ 20 (acknowledging that he was on duty and "had responsibility to observe [plaintiff] while he
2  was on CSW," but otherwise avoiding the alleged urination incident); Hardy Decl. at ¶ 19 ("Some
3  inmates on CSW urinate on themselves . . . ."). Defendants contend that summary judgment is
4  appropriate because plaintiff did not suffer an excessive risk to his health or safety while on CSW
5  and because there is no indication that either defendant had knowledge of or disregarded such a
6  risk. ECF No. 34-2 at 7. As explained below, defendants' motion must be granted because there
7  is simply no evidence of deliberate indifference.

8  First, defendants note that they were in general attentive to plaintiff during this inherently
9  but necessarily unpleasant contraband-watch confinement. Plaintiff received "regular meals and
10 frequent snacks," and that "medical staff checked [his] vital signs and examined him at his cell
11 door at least once and often twice each day while he was on CSW . . . ." Totten Decl. at ¶¶ 21-22;
12 Hardy Decl. at ¶¶ 10-11. Plaintiff does not contest that he received attentive and seemingly
13 effective medical care while on CSW. While undoubtedly unpleasant, there is no indication that
14 these conditions of confinement caused plaintiff to experience any negative health consequences.
15 Indeed, it is difficult to conceive of an excessive risk to plaintiff's health or safety in light of the
16 medical care that he received while on CSW. *See Farmer*, 511 U.S. at 832 (explaining that
17 "humane conditions of confinement" includes "adequate food, clothing, shelter, and medical
18 care"). Though plaintiff contends that defendants' alleged attempt to cover up the September 29,
19 2009 urination incident demonstrates deliberate indifference, *see* Pl.'s Opp'n at 5-6, he fails to
20 show that those actions posed a "substantial risk of serious harm" to his health or safety, *see*
21 *Farmer*, 511 U.S. at 837. Because there is no evidence that the conditions of confinement during
22 plaintiff's sixteen day stay on CSW posed an excessive risk to his health or safety, plaintiff has
23 necessarily failed to establish that Hardy or Totten knew of and disregarded such a risk.

24 Moreover, defendants' evidence undermines plaintiff's claims that they were responsible
25 for the October 1, 2009 incident in which plaintiff defecated on himself, and that plaintiff was
26 subsequently denied the ability to clean himself. Defendants point out that Totten was on duty for
27 only two of the sixteen days that plaintiff was on CSW, and that neither of them was on duty on
28 October 1, 2009. Totten Decl. ¶¶ 19, 20; Hardy Decl. ¶ 16. Plaintiff does not dispute the fact that

1  neither defendant was on duty.  Defendants' evidence also shows that after the October 1, 2009
2  incident, plaintiff was removed from his cell, that he cleaned the fecal matter off of his body, and
3  that he was put in new clothing before being returned to his cell.  Totten Decl., Ex. 1 at "Page
4  28."  In his opposition, plaintiff admits to receiving clean underwear and "wet towelettes, such as
5  wet-naps or baby wipes to sanitize himself" following the incident.  Pl.'s Opp'n at 9, 13-14.
6  Given that defendants were not responsible for the October 1, 2009 incident, coupled with the fact
7  that plaintiff was allowed to clean up following the incident, there is also no genuine dispute for
8  trial as to this aspect of plaintiff's conditions of confinement claim.

9  In his opposition to defendants' motion for summary judgment, plaintiff contends that
10  "defendants acted with 'deliberate idifference' [sic]" and that "defendants clearly knew of the
11  condition's [sic] plaintiff was enduring and did not respond to it in a reasonable manner."  Pl.'s
12  Opp'n at 6.  Plaintiff's conclusory allegation is insufficient to avoid summary judgment.  *See Leer*
13  *v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988) ("Sweeping conclusory allegations will not suffice
14  to prevent summary judgment.  The prisoner must set forth specific facts as to each individual
15  defendant's deliberate indifference." (citations omitted)).  Deliberate indifference is an essential
16  element of a conditions of confinement claim, and plaintiff has failed to make a showing
17  sufficient to establish even the existence of an excessive risk to his health or safety—let alone that
18  defendants knew of and disregarded such a risk.  Accordingly, the court must grant defendants'
19  motion for summary judgment as to plaintiff's conditions of confinement claim.

20  **II.     Excessive Force**

21  Plaintiff contends that the manner of application of the tape and waist restraints resulted in
22  cruel and unusual punishment.  "When prison officials use excessive force against prisoners, they
23  violate the inmates' Eighth Amendment right to be free from cruel and unusual punishment."
24  *Clement v. Gomez*, 298 F.3d 898, 903 (9th Cir. 2002).  In order to establish a claim for the use of
25  excessive force in violation of the Eighth Amendment, a plaintiff must establish that prison
26  officials applied force maliciously and sadistically to cause harm, rather than in a good-faith
27  effort to maintain or restore discipline.  *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992).  In making
28  this determination, the court may evaluate (1) the need for application of force, (2) the

relationship between that need and the amount of force used, (3) the threat reasonably perceived by the responsible officials, and (4) any efforts made to temper the severity of a forceful response. *Id.* at 7; *see also id.* at 9-10 ("The Eighth Amendment's prohibition of cruel and unusual punishment necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." (internal quotation marks and citations omitted)). "Unless it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain . . . the case should not go to the jury." *Whitley v. Albers*, 475 U.S. 312, 321 (1986).

According to plaintiff, Hardy applied tape and waist restraints with such force that plaintiff felt his circulation cutting off and experienced difficulty breathing. Pl.'s Compl. at 5-6. Hardy's alleged response to plaintiff's complaints was to tell him "[i]f you don't shut up, I am going to make it tighter" and to wrap the tape tighter. *Id.* Additionally, plaintiff contends that a nurse noticed plaintiff was incoherent and requested that he be rushed to the TTA. *Id.* at 6.

Hardy, however, contends that he "applied the tape in a snug manner, but not so tight as to constrict the inmate." Hardy Decl. ¶ 9. Hardy also argues that he applied the tape and waist restraints "in a good-faith effort to ensure [p]laintiff would not conceal or dispose of contraband." ECF No. 34-2 at 11. Hardy further emphasizes that plaintiff did not complain about the tightness of the tape and waist chains to the nurse that allegedly found plaintiff incoherent or to the doctor that evaluated plaintiff at the TTA. *Id.* at 10.

In his opposition, plaintiff maintains his version of the events as alleged in his sworn complaint,[3] but specifies that thirty to forty minutes elapsed between the time Hardy loosened the waist restraints and cut off some tape and the time plaintiff met with the doctor in the TTA. Pl.'s Opp'n at 5, 11, 16-17.

/////

---

[3] The allegations of a verified complaint may serve as an affidavit for purposes of summary judgment if they are based on personal knowledge and set forth the requisite facts with specificity. *See Human Life of Washington Inc. v. Brumsickle*, 624 F.3d 990, 1022 (9th Cir. 2010).

1           There is a significant discrepancy between plaintiff's account—that he felt his circulation
2    cutting off, had difficulty breathing, became incoherent, and had to be rushed to the TTA—and
3    Hardy's claim that he applied the tape "in a snug manner, but not so tight as to constrict" plaintiff.
4    Consequently, the fact finder (in this case a jury) must determine whether this discrepancy in the
5    amount of force Hardy applied is a genuine dispute as to a material fact.  The fact is material
6    because plaintiff's excessive force claim, as a matter of substantive law, rests in large part on the
7    amount of force that Hardy applied when taping plaintiff's waist.  Moreover, the dispute is
8    genuine because a fair-minded jury could, based on the specific factual allegations in plaintiff's
9    verified complaint, return a verdict for plaintiff on his excessive force claim.  Thus, the dispute as
10   to the amount of force that Hardy applied is both genuine and material.  Accordingly, Hardy's
11   representation that he merely applied the tape in a "snug manner" simply underscores one of the
12   factual disputes which preclude summary judgment.

13          Hardy defends his actions as a "good-faith effort to ensure [p]laintiff would not conceal or
14   dispose of contraband." ECF 34-2 at 11.  Hardy, however, fails to recognize that plaintiff is not
15   challenging the general practice of applying tape and waist restraints to prisoners on CSW.
16   Rather, plaintiff is challenging Hardy's specific application of force, which plaintiff suggests
17   exceeded the amount necessary and was for the very purpose of causing harm.  Furthermore,
18   defendant's claim that he acted in good faith when taping plaintiff's waist conflicts in material
19   ways with plaintiff's account.  Again, the issue is whether the inconsistency between the accounts
20   is a genuine dispute as to a material fact.  The fact is material because plaintiff's excessive force
21   claim necessarily fails if Hardy applied force in a good-faith effort to maintain or restore
22   discipline (and, conversely, is still viable if Hardy applied force maliciously and sadistically).
23   The dispute is genuine because a fair-minded jury could, based on the specific factual allegations
24   in plaintiff's complaint (e.g., the physical effects and Hardy's statement "[i]f you don't shut up, I
25   am going to make it tighter"), find that Hardy applied force maliciously and sadistically—and not
26   in a good-faith effort to maintain or restore discipline—and return a verdict for plaintiff on his
27   excessive force claim.  Thus, the dispute as to whether Hardy applied force in a good-faith effort
28   /////

to maintain or restore discipline is both genuine and material and precludes summary judgment in favor of Hardy on his asserted justification for the force he applied.

Moreover, the fact that plaintiff failed to complain about the tightness of the tape and waist chains to the nurse and doctor does not warrant summary judgment. First, plaintiff contends that he did not complain about the tightness of the restraints to the doctor because Hardy had loosened the restraints and cut the tape thirty to forty minutes before plaintiff met with the doctor in the TTA. Pl.'s Opp'n at 5, 11, 16-17. Second, that plaintiff may not have sought medical treatment is relevant, at most, to plaintiff's claim of residual injury and to the extent of that injury. Indeed, a jury may well accept Hardy's rather than plaintiff's version of what happened. However, at the summary judgment stage, the court cannot weigh plaintiff's credibility and resolve genuine disputes over factual issues. Rather, the court must accept plaintiff's version of what occurred and must draw all reasonable inferences in his favor. *Anderson*, 477 U.S. at 249, 255; *Matsushita*, 475 U.S. at 587. If a reasonable jury could credit plaintiff's version over the defendant's version, summary judgment must be denied. *Warren*, 58 F.3d at 441. At trial, if plaintiff's account as to what occurred and what force was used is credited, a jury could reasonably find for plaintiff on his claim of excessive force.

Accordingly, defendant Hardy's motion for summary judgment on plaintiff's excessive force claim must be denied.

**III.     Qualified Immunity[4]**

Qualified immunity protects government officials from liability for civil damages where a reasonable person would not have known that their conduct violated a clearly established right. *Anderson v. Creighton*, 483 U.S. 635, 638-39 (1987). "In resolving questions of qualified immunity at summary judgment, courts engage in a two-pronged inquiry." *Tolan v. Cotton*, No. 13-551, ___ U.S. ___, ___, 2014 WL 1757856, at *4 (May 5, 2014) (per curiam). "The first asks whether the facts, 'taken in the light most favorable to the party asserting the injury, . . . show

---

[4] Because the court finds defendants are entitled to summary judgment on the merits of plaintiff's conditions of confinement claim, the court need not address the issue of qualified immunity as to that claim.

the officer's conduct violated a federal right.'" *Id.* (internal bracketing omitted) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). "The second prong of the qualified-immunity analysis asks whether the right in question was 'clearly established' at the time of the violation." *Tolan*, 2014 WL 1757856, at *4 (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). A plaintiff invokes a "clearly established" right when "the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson*, 483 U.S. at 640. "The salient question is whether the state of the law at the time of an incident provided fair warning to the defendants that their alleged conduct was unconstitutional." *Tolan*, 2014 WL 1757856, at *4 (internal bracketing and quotation marks omitted).

As discussed above, the material facts as to whether Hardy violated plaintiff's federally protected rights are disputed and cannot be resolved by summary judgment. Taking the version set out in plaintiff's verified complaint--itself a sworn statement--as true, and viewed in the light most favorable to the plaintiff, the facts indicate that Hardy's alleged conduct violated plaintiff's Eighth Amendment right to be free from excessive force. Moreover, the law at the time of the incident provided fair warning to Hardy that his alleged conduct—taping and tightening plaintiff's restraints so tight that plaintiff felt his circulation cutting off, had difficulty breathing, became incoherent, and had to be rushed to the TTA—was unconstitutional. *See, e.g., Palmer v. Sanderson*, 9 F.3d 1433, 1436 (9th Cir. 1993) (affirming the denial of qualified immunity on an excessive force claim where defendants unnecessarily fastened handcuffs so tightly around plaintiff's wrists that they caused him pain and left bruises and refused to loosen the handcuffs after plaintiff's complaints of pain); *Alexander v. Perez*, 124 F. App'x. 525, 526 (9th Cir. 2005) ("Since 1992, the legal standard articulated in *Hudson* has provided officers with ample notice that malicious or sadistic use of force is unlawful."). Accordingly, Hardy's defense of qualified immunity with respect to plaintiff's excessive force claim cannot be resolved on summary judgment.

/////

/////

/////

**RECOMMENDATION**

Accordingly, it is hereby RECOMMENDED that the motion for summary judgment filed by defendants on February 26, 2014 (ECF No. 34) be granted as to plaintiff's conditions of confinement claim against Totten and Hardy but denied as to plaintiff's excessive force claim against Hardy.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED:  August 5, 2014.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE